AO 106 (Rev. 04/10) Application for a Search Warrant                              AUTHORIZED AND APPROVED/DATE: K. Blackwell 03/22/2024

# UNITED STATES DISTRICT COURT
для the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. MJ-24-255-STE
IN THE MATTER OF THE SEARCH OF INFORMATION )
ASSOCIATED WITH FACEBOOK USER ID 100031001375692, )
100057319058315, AND maddmoney.mega THAT IS STORED AT )
PREMISES CONTROLLED BY META PLATFORMS INC. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment "A," which is attached and incorporated by reference herein.

located in the _____Northern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment "B," which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of Fentanyl |
| 21 U.S.C. § 841 | Possession of Fentanyl with Intent to Distribute |

The application is based on these facts:

See attached Affidavit of DEA Task Force Officer, Girard Capps, which is incorporated by reference herein.

☒ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Girard C. Capps, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Mar 22, 2024**

*Judge's signature*

City and state: Oklahoma City, Oklahoma     SHON T. ERWIN, U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100031001375692, 100057319058315, AND maddmoney.mega THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS INC. | Case No. MJ-24-255-STE<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Girard C. Capps, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this Affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID's 100031001375692, 100057319058315, and "maddmoney.mega."

2. I, Girard C. Capps, am a Task Force Officer with the Drug Enforcement Administration ("DEA") currently assigned to the Oklahoma City, Oklahoma District Office. As such, I am an investigative and law enforcement officer of the United States authorized to conduct

investigations of, and to make arrests and seizures for, offenses enumerated in the Controlled Substances Act, Title 21, United States Code.

3. I have been a Task Force Officer (TFO) with DEA for approximately three years. Prior to being assigned to the DEA, I was assigned to the Lawton Police Department's Special Operations Unit. During my career I have worked numerous conspiracy investigations, and complex, multi-jurisdictional investigations.

4. During my employment in law enforcement, I have received training and conducted investigations related to illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and others. I have participated in many aspects of drug investigations to include the following: undercover operations, surveillance, Title III investigations, search warrants, arrests, reviewing taped conversations and drug records, along with debriefing defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.

5. I have had conversations with and have been in the company of other experienced local, state, and federal law enforcement officers, as well as prosecuting attorneys representing both state and federal systems, concerning narcotics and dangerous drug trafficking activities and criminal violations.

6. Also, I have worked in the company of other experienced law enforcement officers and have discussed their investigative techniques and experiences with them. In the course of investigations, which I have been party to, I have become familiar with the clandestine business practices of drug traffickers and illicit drug traffickers.

7.   The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.   Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 have been committed by Breon BELLAMY, to include violations relating to the overdose death of M.W. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

9.   On August 23, 2023, DEA Oklahoma City District Office Tactical Diversion Squad personnel were notified by the Stephens County Sheriff's Office (SCSO) of a suspected fentanyl overdose death in Loco, Oklahoma. Investigators responded to Loco, Oklahoma and assisted with the initiation of an investigation into the death of M.W.

10.   In the days following M.W.'s death, Detective Tim Van with the SCSO obtained a search warrant for the Facebook accounts of M.W. (100002824358317), Joanie Wilson (100001414663158), and Reecy BENCH (100010000306803) through the District Court of Stephens County, OK. In the data sent by Facebook (Meta Inc.), which covered the dates of August 20, 2023 to August 23, 2023, Det. Van noticed that BENCH had a conversation with her mother, Joanie WILSON. In the conversation BENCH asked her mother to provide blues (a common term for fentanyl laced tablets) for BENCH and M.W. to use. Det. Van also noticed that BENCH told M.W. that she would be getting blues from her mother for the two of them to smoke. The conversation took place approximately nine hours before M.W.'s death.

11. While reviewing messages in BENCH'S Facebook records from August 20, 2023 through August 23, 2023, investigators determined that on August 21, 2023, BENCH and WILSON traveled to the Comanche Casino in Lawton, Oklahoma to receive approximately 150 fentanyl-laced pills from a source identified as Breon BELLAMY. BENCH and BELLAMY arranged this transaction using BELLAMY's Facebook messenger account 100031001375692. Both BENCH and Wilson admitted to conducting this transaction and investigators confirmed their story by reviewing casino surveillance footage and witnessing BELLAMY meet with BENCH. Both BENCH and WILSON admit that a portion of those pills were meant for re-distribution.

12. On December 26, 2023, TFO Capps and TFO Jim Peek spoke with a cooperating individual in Stephens County, OK. The cooperating individual stated that BENCH continued to distribute fentanyl via Facebook Messenger from the time of M.W.'s death on August 23, 2023 to BENCH's arrest on December 9, 2023. The cooperating individual showed Capps and Peek a conversation where an agreement to provide fentanyl was made by BENCH on November 23, 2023, using a different Facebook account (61553961367568), also using the name Reecy BENCH. TFO Capps obtained a federal search warrant for this Facebook account.

13. In the data sent by Facebook (Meta, Inc.), TFO Capps found additional messages between BENCH and BELLAMY that referenced the sale of Fentanyl. BELLAMY uses two different accounts, 100031001375692 and 100057319058315 to message BENCH as recently as November 2023. Furthermore, BELLAMY has recently began using another account, with user ID maddmoney.mega and a username of "Monte Bellamy". "Monte" is Breon BELLAMY's middle name. The Facebook profile picture for the account "maddmoney.mega" also matches the description for Breon BELLAMY. The accounts

biography information also lists #breonbplayin, which suggests the owner of the account is Breon Monte BELLAMY.

14. Investigators believe that, between all three accounts, BELLAMY uses Facebook to facilitate the purchase and distribution of fentanyl. It is my opinion, based on my training and experience, that the drug transactions between BENCH and BELLAMY, uncovered from BENCH's Facebook records, were not isolated incidents. Further, in my training and experience, I know Facebook users to use multiple Facebook accounts interchangeably. I believe there is probable cause to believe that there is further evidence of drug transactions on these three Facebook accounts from August 1, 2023 to the current, March 7, 2024. A search of these records would make clear the extent of BELLAMY's involvement in both buying and selling fentanyl laced pills and would uncover additional suppliers and conspirators of the trade.

15. I believe that this Affidavit provides sufficient evidence that probable cause exists to require Facebook to furnish stored data for the Facebook username "Breon Bellamy", "Breon M Bellamy", and "Monte Bellamy" (Facebook Accounts: 100031001375692, 100057319058315, and maddmoney.mega). A preservation request has been submitted to Facebook in order to preserve the stored data related to Facebook Accounts. I therefore request a search warrant requiring Meta Platforms Inc., to furnish data for these Facebook accounts. Meta Platforms Inc. is in the business of providing electronic communication services to its subscribers. This service includes maintaining records related to subscriber information, communication between subscribers, and stored data utilized by subscribers and maintained by provider pursuant to their service agreements. As a result, the types of information sought by the Government are in fact as a regular course of business kept by Meta Platforms Inc.

16. In general, providers like Meta Platforms Inc., asks each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

17. Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

18. In some cases, Facebook users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

19. Meta Platforms Inc. owns and operates a free-access social networking website named Facebook that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news,

photographs, videos, and other information with other Facebook users, and sometimes with the general public.

20. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

21. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

22. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

23. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

24. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

25. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and

Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

26. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

27. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

28. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

29. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

30. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

31. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

32. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on

Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

33. Social networking providers like Meta Platforms Inc. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta Platforms Inc., can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further,

Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35. Therefore, the computers of Meta Platforms Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

36. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook (Meta Platforms Inc.) to disclose to the government copies of the records and

11

other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

37. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Meta Platforms Inc., who will then compile the requested records at a time convenient to it, probable cause exists to permit the execution of the requested warrant at any time in the day or night.

38. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(3)(A)(i).

39. Pursuant to 18 U.S.C. 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

40. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until March 22, 2025. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*/s/ G. Capps*
Girard C. Capps
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on __22nd__, March 2024.

*/s/ Shon T. Erwin*
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID: 100031001375692, 100057319058315, and maddmoney.mega that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California.

1

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including for user ID 100031001375692, 100057319058315, and maddmoney.mega, full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the accounts and all other documents showing the user's posts and other Facebook activities August 1, 2023 thru March 14, 2024;

(c) All photos and videos uploaded by those user IDs and all photos and videos uploaded by any user that have that user tagged in them from August 1, 2023 thru March 14, 2024, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

1

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, those user IDs, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from August 1, 2023, thru March 14, 2024, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from August 1, 2023 thru March 14, 2024;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21 U.S.C. §§ 841 and 846 (Drug Trafficking and Conspiracy), involving Breon BELLAMY since August 1, 2023 thru March 14, 2024, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Evidence indicating the distribution of illegal drugs

(b) Communications between BELLAMY and possible sources of supply of illegal drugs

(c) Preparatory steps taken in furtherance of the scheme

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).